**No.: _____**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

**SHERIDA JOHNSON, et al.,**

*Plaintiffs-Respondents*,

v.

**Nissan North America, Inc.,**

*Defendant-Petitioner,*
_____

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:17-cv-00517-WHO
_____


**DEFENDANT-PETITIONER NISSAN NORTH AMERICA, INC.'S
PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 23(f)**

Amir Nassihi (SBN: 235936)
anassihi@shb.com
Kevin Underhill (SBN: 208211)
kunderhill@shb.com
Andrew L. Chang (SBN: 222309)
achang@shb.com
Andrew Trask (SBN: 320222)
atrask@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

*Counsel for Nissan North America, Inc.*

1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Nissan North America, Inc., states that its parent corporation is Nissan Motor Co., Ltd., a publicly held corporation. Renault S.A. owns more than 10% of Nissan Motor Co., Ltd.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................7

QUESTIONS PRESENTED....................................................................9

STATEMENT OF FACTS .....................................................................9

STANDARD OF REVIEW ...................................................................17

ARGUMENT .......................................................................................17

I.  The District Court Manifestly Erred in Finding a "Common Defect."..........18

    A.  The district court applied improper defect standards.........................18

    B.  The district court wrongly admitted *ipse dixit* expert testimony. .......19

II.  The District Court Erred in Holding Reliance Could Be "Presumed."..........22

III.  The District Court Manifestly Erred in Accepting Plaintiffs' Untested Damages Model. .....................................................................25

    A.  The district court wrongly held problems with underlying data and methodology went to "weight," not admissibility.......................25

    B.  The district court wrongly relied upon a *proposed*, unperformed damages analysis. ...............................................................26

    C.  The district court ignored individualized issues presented by used-car transactions. .........................................................29

    D.  Acceptance of an unperformed damages model and deferral of equitable claims creates a "death knell" situation.............................30

CONCLUSION ....................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Abuan v. Gen. Elec. Co.*,
3 F.3d 329 (9th Cir. 1993) ...............................................................20

*Anderson v. Ford Motor Co.*,
2020 WL 1853321 (W.D. Mo. Feb. 14, 2020) .........................9, 14, 15

*Beaty v. Ford Motor Co.*,
2021 WL 3109661 (W.D. Wash. July 22, 2021)...............9, 10, 23, 29

*Beaty v. Ford Motor Co.*,
854 F. App'x 845 (9th Cir. 2021) .....................................................10

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .......................................................17, 30

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ...........................................................23

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993).......................................... 12, 13, 14, 20, 25, 28

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................17

*Glenn v. Hyundai Motor Am.*,
No. 8:15-cv-02052 (C.D. Cal.) .........................................................30

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) ..................................................18, 19, 21

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018)............................................26

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)...........................................................................27

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................26

*Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*,
   831 F.3d 892 (7th Cir. 2016) .................................................................28

*Kondash v. Kia Motors Am., Inc.*,
   2020 WL 5816228 (S.D. Ohio Sept. 30, 2020) ....................................9

*Lohr v. Nissan N. Am., Inc.*,
   2022 WL 1449680 (W.D. Wash. May 9, 2022) .................................9, 10, 24, 27

*MacDougall v. Am. Honda Motor Co.*,
   2021 WL 6101256 (9th Cir. Dec. 21, 2021).........................................26

*MyFord Touch Consumer Litig.*,
   2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) .......................................23

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc) .............................................17, 27, 28, 31

*Priester v. Cromer*,
   736 S.E.2d 249 (S.C. 2012) ................................................................10

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .........................................................30, 31

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................................22

*Testone v. Barlean's Organic Oils, LLC*,
   2021 WL 4438391 (S.D. Cal. Sep. 28, 2021)..................................22, 28

*Webb v. Carter's, Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011).........................................................23

*Wendt v. Host Int'l, Inc.*,
   125 F.3d 806 (9th Cir. 1997) ..............................................................25

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
   No. 19-CV-00792-EMC, 2022 WL 844152 (N.D. Cal. Mar. 22,
   2022) ...................................................................................................31

*Zakaria v. Gerber Prod. Co.*,
   755 F. App'x 623 (9th Cir. 2018) ..................................................25, 26

5

**Rules**

Federal Rule of Appellate Procedure 26.1 ................................................................. 2

Federal Rule of Evidence 702 .................................................... 17, 19, 20, 21, 25, 28

# INTRODUCTION

Like many manufacturers, Nissan offers large "panoramic sunroofs" (PSRs) made from tempered safety glass as a vehicle option. The named plaintiffs here are Nissan owners whose PSRs broke. They contend this happened because Nissan's PSRs are defective, and allege Nissan knew about the defect but failed to disclose it to them. But they have never articulated what the alleged defect is nor what Nissan should have told them about it (a question they refused to answer in discovery). They claim Nissan's PSRs have a "propensity" to break—though their experts made no effort to measure that propensity generally or any design-aspect's effect on it—and that if a PSR breaks it will be especially startling because of how tempered safety glass breaks (into small and relatively dull pieces, as required). Though the only failure-rate evidence is that less than 0.2% of PSRs may break for *any* reason during the entire vehicle life, Plaintiffs contend all PSR purchasers were necessarily and uniformly harmed by Nissan's failure to disclose the "defect," and propose to measure classwide damages by an unperformed conjoint analysis. The district court certified four state classes, a decision this Court should review now.

A rigorous analysis is required to determine whether plaintiffs have met their burden to prove certification by a preponderance of admissible evidence. This requires district courts to resolve factual disputes necessary to determine Rule 23's

requirements, including disputes that involve expert-evidence conflicts. The district court manifestly failed to do this.

For example, though Plaintiffs' theory revolves around PSRs' alleged "propensity" to break during the "life of the vehicle," the district court certified a class without analyzing their experts' testimony on these topics, much less ensuring it was admissible. Plaintiffs' experts conceded they did not quantify that "propensity." But the district court held certification may be based on an expert's "qualitative" opinion about the possibility of failure, leaving final evaluation of that opinion to the jury. This illustrates the district court's failure to resolve factual certification disputes.

The district court manifestly erred in ruling materiality of any omission was a common issue, defining "materiality" in a way that this result is virtually guaranteed. Its ruling presents an unsettled, fundamental issue common to many similar cases, justifying interlocutory review.

The district court also manifestly erred by refusing to resolve expert-testimony disputes relating to whether damages can be established on a common basis, and about the availability of equitable relief, postponing the necessary analysis for both until *after* certification. The possibility of open-ended damages, especially given the erroneous deferral of decisions about equitable remedies until

after trial, creates unfair settlement pressure that may be the "death knell" of this litigation. For that reason also, this Court should grant Nissan's petition.

## QUESTIONS PRESENTED

1. Did the district court manifestly err in holding that a common "defect" could be established with common evidence under the circumstances here, having refused to resolve issues relating to disputed expert testimony?

2. Did the district court manifestly err in holding that materiality and reliance can be proven with common evidence, defining those terms in such a way that they will necessarily be "presumed" in virtually any case?

3. Did the district court manifestly err in postponing necessary decisions until after certification, a holding that poses "death knell" concerns?

## STATEMENT OF FACTS

- **Other PSR Class Actions**

This is one of several similar class actions against manufacturers that offer tempered-glass PSRs. *See, e.g., Lohr v. Nissan N. Am., Inc.*, 2022 WL 1449680 (W.D. Wash. May 9, 2022) (granting summary judgment); *Beaty v. Ford Motor Co.*, 2021 WL 3109661 (W.D. Wash. July 22, 2021) (denying class certification); *Anderson v. Ford Motor Co.,* 2020 WL 1853321 (W.D. Mo. Feb. 14, 2020) (granting summary judgment); *Kondash v. Kia Motors Am., Inc.*, 2020 WL 5816228 (S.D. Ohio Sept. 30, 2020) (denying class certification). This Court

reversed a grant of summary judgment in *Beaty* (after which the certificaiton was denied). *Beaty v. Ford Motor Co.*, 854 F. App'x 845 (9th Cir. 2021). The plaintiffs in *Lohr*, an identical action against Nissan involving the same experts and arguments, have appealed that court's grant of summary judgment (9th Cir. No. 22-35473). The schedule in this action and *Lohr* were coordinated (Dkt. 166 at ¶ 10) and efficiency would be well-served by granting this petition and allowing it to proceed with *Lohr* for decision by the same panel.

- **Plaintiffs' Liability Theory**

Plaintiffs contend Nissan's PSRs have a "propensity to spontaneously shatter,"[1] which they say is a defect constituting "a safety hazard" that Nissan should have disclosed at the time of sale. Dkt. 208, ¶¶ 4, 70, 191. Plaintiffs contend—without evidence—that tempered-glass PSRs shatter more frequently under "normal driving conditions," without identifying an appropriate failure rate/method the PSRs should be compared to. Dkt. 238 at 16.

Tempered-glass PSRs is the industry norm; it complies with Federal Motor Vehicle Safety Standards ("FMVSS"). Dkt. 146-3 at 19; *see Priester v. Cromer*, 736 S.E.2d 249, 255 (S.C. 2012) (noting that under FMVSS 205, "tempered glass

---

[1] Plaintiffs' complaint alleged PSRs spontaneously shatter on their own, with no external impact, but they abandoned that theory for lack of evidence. They now concede external damage to the glass is a prerequisite, arguing damage may spread and later cause a fracture that *appears* spontaneous. Dkt. 213-12 at 45:22–46:1.

may be used anywhere in the vehicle except the windshield"). The only other legal alternative is laminated glass. Most automakers, like Nissan, use tempered glass because tempering makes it considerably stronger than laminated glass, and if tempered glass breaks, it breaks into small fragments with relatively dull edges, unlike laminated glass. Dkt. 146-3 at 14.

Plaintiffs have offered no evidence regarding the alleged "propensity" of Nissan's PSRs to fracture. Nissan's evidence was that 99.85% of PSRs have not broken during the vehicles' entire expected lifetimes for *any* reason, including car wrecks, hail, or vandalism. Dkt. 146-13 at 4, 10-11; Dkt. 238 at 3. But the district court ruled Plaintiffs did not need admissible evidence of the "propensity," saying a "qualitative" statement is sufficient. Dkt. 238 at 16. Similarly, though Plaintiffs contend the use of tempered safety glass is a "safety issue," they did not quantify this alleged risk, nor identify any case in which a broken PSR caused an injury requiring medical attention. The district court instead focused on the possibility that shattering might distract drivers (Dkt. 238 at 17), though laminated glass would be more likely to break because it is weaker than tempered glass, and there was no evidence comparing the effect of distraction (if any) between the options.

- **The Lack of Defect Evidence**

Nissan moved for summary judgment at the same time it opposed class certification, and the district court's certification analysis expressly incorporated its

summary-judgment analysis. *See* Dkt. 238 at 16, 37. Nissan argued Plaintiffs offered no admissible defect evidence. Plaintiffs contend PSRs are defective because of various design aspects that supposedly contribute to shatter "propensity." Dkt. 230-2 at 3. But Plaintiffs' experts made no effort to measure this "propensity," as their expert Dr. Thomas Read conceded. Dkt. 213 at 12–13 (collecting deposition testimony). Plaintiffs' only defect evidence is Read's *ipse dixit*, which Nissan moved to exclude.

In its tentative ruling, the district court indicated it would exclude Read's opinion because he "did not explain how each [variable] contributes" to the alleged propensity to shatter. Dkt. 232 at 2. At the hearing, Nissan showed that excluding Read's opinion would require granting summary judgment: the only remaining "variable" was the use of tempered glass, but there was no evidence Nissan ever concealed this. Dkt. 237 at 3:23–5:9. The district court then changed its mind, writing in its final order that "[e]ven if Read does not know the exact effect that each individual element had to the overall propensity to shatter, he sufficiently opines that each element does have such an effect and that, together, they create a defect...." Dkt. 238 at 20. It also held Read's failure to test his hypothesis was not a problem because *Daubert* requires only "testability," not actual data or testing. Dkt. 238 at 20 (discussing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)).

By contrast, Nissan's expert Dr. Paul Verghese performed field testing on the glass, measuring the stress on each model's PSR under various operating conditions, refuting Plaintiffs' claims. Dkt. 146-3 at 50–52. He found each PSR's glass was strong enough to withstand any tensile stress from normal or even abnormal driving conditions. *Id.* at 50. This evidence was uncontroverted. Consistent with that, in 2021, the National Highway Transportation Safety Administration closed an investigation analyzing PSRs (including data about Nissan's PSRs), finding insufficient evidence of a safety-related defect. Dkt. 217-1, at 3 (analyzing data from "97 distinct models produced over 11 model years totaling some 10 million vehicles," noting no crashes from driver distraction from 4,000 reported sunroof fractures).

The district court also admitted Neil Hannemann's testimony, Plaintiffs' other technical expert. Like Read, Hannemann never conducted any testing. But the district court held it was enough that he examined consumer complaints and because it "requires two uncontroversial premises: (1) shattering glass while driving can reasonably be distracting and (2) distracted driving is dangerous." Dkt. 238 at 17. (It did not explain how, if those premises are uncontroversial, expert testimony could assist the jury.)

Based on Read's and Hannemann's testimony, the district court denied summary judgment, stating Plaintiffs' "experts have opined that the PSRs fail

under normal driving conditions, which is sufficient to survive summary judgment on its own." *Id.* at 22. The court added that Plaintiffs "have introduced evidence that consumers filed complaints about the issue, introduced reports about the shatterings, and introduced the named plaintiffs' descriptions of the events." *Id.*

Nissan also argued the defect, if any, would not be material to a reasonable consumer. The district court disagreed, holding "consumers, as a general matter, expect sunroofs not to shatter under normal driving conditions," calling it "an obvious safety issue." *Id.* at 23–24. It rejected Nissan's argument that Plaintiffs had offered no evidence of alleged "propensity" to shatter, holding that was "a matter for the jury." *Id.* at 24. It disagreed with another court's holding that a similar evidentiary lack mandated summary judgment. *See id.* (disagreeing with *Anderson v. Ford Motor Co.,* 2020 WL 1853321 (W.D. Mo. Feb. 14, 2020)). The district court also rejected Nissan's argument that Plaintiffs offered no safety-risk evidence, saying it "would disagree even without expert evidence, based on what should really be uncontroversial common sense." *Id.* Nissan offered uncontroverted evidence that its PSRs had been on the road for more than 60 billion miles with no evidence of injuries. Dkt. 146-13 at 4. The district court never discussed this safety data.

- **Plaintiffs' Evidence at Class Certification**

At class certification, Nissan argued the named plaintiffs were atypical and common issues did not predominate. It argued the named plaintiffs were atypical because evidence showed their PSRs likely broke from external impacts, not "spontaneously" due to some common-design defect. For instance, Johnson's vehicle showed impacts consistent with rock strikes on numerous surfaces, including the glass. Dkt. 146-3 at 37. Sullivan's vehicle also showed numerous impact sites. *Id*. at 27. Rocks were found in Ahrens' vehicle's grill, and there were multiple paint chips next to her PSR. *Id.* at 33, 35–36. The district court held all this evidence was "irrelevant" because "what matters is the design" of the PSR, not the reason it broke in any particular case. Dkt. 238 at 31.

Nissan argued individual issues predominated because Plaintiffs offered no common-defect evidence, but the district court rejected this argument for the reasons above. *Id.* at 37. Nissan also argued individual issues predominated because the evidence showed vehicles were exposed to varying levels of external damage, but the district court rejected this for the same reasons it found the named plaintiffs were typical. *Id.* It rejected Nissan's other 23(b)(3) challenges as well.

Finally, Nissan challenged Plaintiffs' classwide damages model. This model relied on an unperformed conjoint analysis designed by their experts Steven Gaskin and Colin Weir. Nissan moved to exclude the model because the experts

had not performed the analysis, it did not consider supply-side factors, and it contained significant methodological flaws. Dkt. 149. The district court ruled Nissan's objections went only to weight, not admissibility. Dkt. 238 at 12–14. In ruling that performing the analysis was not required, the court deferred to Plaintiffs' "tactical choice to not perform the survey yet":

> That may come with benefits to them—it saves expenses that may not have to be spent if the parties ultimately reach a settlement, for instance. But that choice also comes with the risk that the results will come back, be challenged, and be excluded closer to trial when there is less or no time to perform another analysis.

*Id.* at 8–9.

Having admitted testimony about Plaintiffs' unperformed survey, the district court turned to another damages-model challenge: it did not account for used cars. Gaskin and Weir planned only to calculate damages for new vehicles: multiplying the conjoint premium their model (allegedly) calculated by the total number of new-vehicle purchases. Dkt. 238 at 40. Nissan objected to this in part because the model did not account for differences between buyers of new and used cars. In its tentative ruling, the district court agreed with Nissan, which would have meant some state classes could not be certified because the named plaintiffs from those states bought used cars. But again the court changed its mind, holding in its final order that the "parties or court can settle on an appropriate methodology" at some point down the line. *Id.* at 41.

## STANDARD OF REVIEW

Under Rule 23(f), review is appropriate when a certification decision (1) "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally"; (2) is manifestly erroneous; or (3) a "death-knell situation" exists for either party "independent of the merits of the underlying claims, coupled with a class certification decision … that is questionable." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

## ARGUMENT

District courts must perform a "rigorous analysis" to determine whether plaintiffs have met their burden to prove certification is appropriate "by a preponderance" of "admissible evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651, 664–65 (9th Cir. 2022) (en banc). This means proffered expert evidence must be admissible under Rule 702. *Id.* "Rigorous analysis" means district courts are "required to resolve any factual disputes necessary to determine…Rule 23's requirements," even conflicting-expert disputes. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). "[W]eighing conflicting expert testimony and resolving expert disputes" is "necessary to ensure that Rule 23(b)(3)'s requirements are met." *Olean,* 31 F.4th at 666.

## I.     The District Court Manifestly Erred in Finding a "Common Defect."

Plaintiffs' theory is that Nissan designed PSRs in a way that "creates a propensity to fracture and shatter under ordinary driving conditions" and that "this shattering can be dangerous while driving." Dkt. 238 at 2. The court manifestly erred by: (1) adopting an improper defect standard; (2) relying on inadmissible expert "qualitative" opinion about a "propensity" to break; and (3) relying on inadmissible expert testimony regarding the alleged risk.

### A.     The district court applied improper defect standards.

Plaintiffs argued Nissan's PSRs are defective simply because there is some chance a PSR may break during "the expected ten-year/150,000-mile useful life of a Class Vehicle" exposed to "ordinary and foreseeable conditions" during that time. Dkt. 135 at 4–5. But this Court has rejected such life-of-the-vehicle theories as an "overly expansive standard for a design defect." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (affirming certification denial).

Similarly, the district court erred by not requiring Plaintiffs' defect theory have a "common solution" that would prevent any possibility of PSR breakage in a vehicle's life. *See id.* at 986–87 (affirming exclusion where expert "conceded that he was unable to identify a 'common solution' to the purported defect"). Plaintiffs could not establish a "common solution" because the only alternative to tempered glass is laminated glass, which uncontradicted evidence establishes is weaker (Dkt.

148-1 at 11, 107, 114) and thus *more* likely to break. At minimum, *Grodzitsky* illustrates that a common solution is a necessary element of a "common" defect. This Court should accept review to resolve this unsettled, fundamental legal issue.

### B. The district court wrongly admitted *ipse dixit* expert testimony.

Federal Rule of Evidence 702 does not merely require use of an accepted methodology, as the district court held. It also requires that the opinion be "based on sufficient facts or data" and that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d).

While recognizing "all glass shatters under some set of conditions," the district court manifestly erred by admitting Read's and Hannemann's opinions as evidence the PSRs had a "propensity" to break under normal conditions. Class certification cannot rely on experts who "could cobble together some form of generalized opinion, even one riddled with scientific and methodological flaws…." *Grodzitsky*, 957 F.3d at 986. That is precisely what occurred here.

Plaintiffs' defect theory requires common evidence that Nissan's design gave their PSRs a "propensity" to break. In a similar context, this Court affirmed exclusion of an expert who did not establish a proper failure rate for comparison because his "opinion was not predicated on reliable scientific methodology." *Id.* at 985–87. Here, the district court absolved Plaintiffs' experts from establishing any failure rates acceptable under "ordinary conditions," stating "a jury could

reasonably conclude that a qualitative descriptor of 'very small chance' is likely more helpful to many consumers than a quantitative one." *See, e.g.,* Dkt. 238 at 13, 16. But "helpfulness" does not establish reliability; it is the other way around. Opinions about a "propensity" or "small chance" of failure are inherently quantitative. *Cf. Abuan v. Gen. Elec. Co.*, 3 F.3d 329, 335 (9th Cir. 1993) (holding experts' "amorphous" views and "dearth of conclusions regarding the quantitative (or even qualitative) increased risk" insufficient to avoid summary judgment). A "qualitative" statement that a PSR may fail lacks a scientific basis. An expert cannot simply opine that a component should have been "more durable" without quantifying how durable it should have been and how it allegedly fell short. The district court erred in admitting these purely "qualitative" statements.

Moreover, Read's testimony was not based on empirical investigation of a connection between tempered glass—including its thickness, curvature, fitting, or attachment to the chassis—and its supposed shatter propensity. Dkt. 213 at 12–13. While the district court tentatively ruled it would exclude Read's opinions because he could not explain how *any* of these factors affected a propensity to shatter (Dkt. 232 at 2), it ultimately held that Read "sufficiently opines that each element does have an effect." Dkt. 238 at 20. It further held that actual testing and data were not required because *Daubert* (as opposed to Rule 702) requires only "testability." Like its other Rule 702 rulings, this was error. The proponent of expert testimony

must prove admissibility by preponderance of the evidence. Fed. R. Evid. 702 (advisory committee note). This includes showing the opinion is based on "sufficient facts or data." Fed. R. Evid. 702(b). The district court identified no evidence (because Plaintiffs offered none) that Read's opinion was anything other than impermissible *ipse dixit.*

Plaintiffs and their experts did not investigate *why* their PSRs broke. Instead, they relied on their personal experience that they broke. Without knowing why, the only "common defect" Plaintiffs identify is simply that the PSR could break *at all*, under any circumstances. But this Court has already rejected the idea that a part is defective just because it does not last the "life of the vehicle." *Grodzitsky,* 957 F.3d at 986. The alleged defect must cause the malfunction. Plaintiffs' experts never identified how this alleged defect could do that, and the district court relieved Plaintiffs of that burden. *See* Dkt. 238 at 20. That was error.

The same goes for Hannemann's opinion that PSRs are dangerous. The district court held this was based on "uncontroversial common sense" that distracted driving is dangerous and shattering glass can be distracting. (Dkt. 238 at 17, 24). "Common sense" is not *evidence*. Hannemann interviewed no one, inspected nothing, analyzed nothing, and did not confirm any anecdotal reports he reviewed. It was manifest error to accept the opinion of either expert here.

## II.  The District Court Erred in Holding Reliance Could Be "Presumed."

Reliance is required for Plaintiffs' consumer-protection claims. *Id.* at 24. The district court ruled Plaintiffs were entitled to a "presumption of reliance" because the unspecified omission was "material" under a "reasonable consumer" standard. *Id.* at 24–25, 38. "[T]here is a split of authority among district courts within the Ninth Circuit as to what evidence of materiality and deception under the UCL, FAL, and CLRA is sufficient to satisfy Rule 23(b)(3)." *Testone v. Barlean's Organic Oils, LLC,* 2021 WL 4438391, at *13 (S.D. Cal. Sep. 28, 2021). This Court should resolve that split.

There is no "presumption" of reliance, and certainly not the conclusive presumption the district court seemingly applied. Reliance can be *inferred* classwide, but only if the omitted information was necessarily material to all class members. If the "omission is not material to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022–23 (9th Cir. 2011) (cleaned up). Here, Nissan presented evidence the omission was not material to all class members. For example, it pointed to Spry's testimony about her vehicle's resale. Spry initially did not disclose she believed the PSR was defective to her buyer. Dkt. 147 at 24 & Ex. 16. When she later changed her mind and did tell the buyer, this did not affect the resale price. *Id*. Nissan also presented uncontroverted

opinions of its expert, Dr. Nauhaus, that different automobile buyers weigh different aspects of vehicles differently. Dkt. 147 at 13–14. This was evidence that information about the omitted "defect" was not uniformly material, and so the "reasonable consumer" standard could not be used to establish predominance. *See, e.g., Webb v. Carter's, Inc*., 272 F.R.D. 489, 502 (C.D. Cal. 2011) (where defendants offer "evidence that materiality would vary from consumer to consumer … the reasonable consumer standard cannot be applied.").

By contrast, Plaintiffs did not present *any* classwide materiality evidence. Plaintiffs never met their burden to specify what Nissan should have disclosed, and how the omitted information could have been uniformly received and relied on by consumers. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Further, Nissan could not have disclosed something it did not know, and if its knowledge (or consumers') varied over time, that would defeat predominance. *See, e.g., Beaty,* 2021 WL 3109661, at *12 (holding "individualized inquiry is necessary to determine if and when Ford knew of a PSR defect for each class vehicle."); *MyFord Touch Consumer Litig*., 2018 WL 3646895, *3 (N.D. Cal. Aug. 1, 2018) (decertifying class based on variations in Ford's knowledge over time). Nissan presented evidence showing that knowledge *did* change over time (Dkt. 147

at 22, 23–24), but the district court did not consider it. Dkt. 238 at 37.[2] Its unsupported holding that knowledge was a common issue ignored countervailing caselaw, and created a split within the Ninth Circuit.

The district court refused to consider the effect of Nissan's undisputed evidence on these issues, stating that "the question is whether the omitted information would be material to a reasonable consumer—and the presumption of reliance that follows." Dkt. 238 at 38. In other words, the court treated the "presumption" as *conclusive*, and treated it as a justification for simply ignoring Nissan's evidence—evidence that showed no presumption was warranted. This approach would mean that reliance and materiality could *never* be individual issues that posed an obstacle to certification. That is not the law.

This Court should grant review and reject the district court's one-size-fits-all approach. To hold otherwise would eliminate reliance and materiality from class-certification analysis.

---

[2] The *Lohr* court examined the same evidence and found it did not meet the plaintiffs' burden to show a genuine dispute existed as to Nissan's knowledge at the time(s) of sale. 2022 WL 1449680, at *3–4.

**III. The District Court Manifestly Erred in Accepting Plaintiffs' Untested Damages Model.**

**A. The district court wrongly held problems with underlying data and methodology went to "weight," not admissibility.**

In another Rule 702 error, the district court rejected the need for considering supply-side facts in Weir's and Gaskin's unperformed conjoint analysis. Dkt. 238 at 12. Instead, it held that "attribute selection" such as considering supply-side factors "goes to weight and not admissibility." *Id.* (citing *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997)). That is not the law. In holding that underlying data went only to "weight," *Wendt* relied (without analysis) on a 1982 decision that predated both *Daubert* and Rule 702. *Wendt,* 125 F.3d at 814 (citing *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp.,* 694 F.2d 1150, 116 (9th Cir. 1982)). Rule 702(b) now states that admissibility requires that testimony be "based on sufficient facts or data." Similarly, Rule 702(d) requires finding that the "expert has reliably applied the principles and methods to the facts of the case." The challenged "attribute selection" here affected Plaintiffs' collection of data and how the experts' methods would apply to the facts of the case. Proper attribute selection is therefore an ***admissibility*** problem, not a weight problem.

This Court has held that a proposed measure of class-wide damages must "reflect supply-side considerations and marketplace realities that would affect product pricing." *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624 (9th Cir.

2018). Conjoint surveys by plaintiffs frequently fail this test, because they measure only a consumer's willingness to pay without evaluating other market forces. *Id.*; *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1118–19 (C.D. Cal. 2015) (rejecting conjoint analysis because it "looks only to the demand side of the market equation") (cleaned up). The district court's error perpetuates an intra-circuit conflict on whether damages models may look only to the demand side. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018) (collecting cases). The calculation of damages models in class actions is of profound legal and commercial significance. This Court's guidance is unpublished and contradictory. *Compare Zakaria*, 755 F. App'x at 624 (affirming exclusion of damages expert for not accounting for supply-side factors in conjoint analysis), *with MacDougall v. Am. Honda Motor Co.*, 2021 WL 6101256, at *1 (9th Cir. Dec. 21, 2021) (reversing exclusion of damages expert for not accounting for supply-side factors in conjoint analysis). This Court should grant Nissan's petition to resolve this split.

**B.    The district court wrongly relied upon a *proposed*, unperformed damages analysis.**

The centerpiece of Plaintiffs' certification evidence was an unperformed conjoint analysis. In refusing to exclude this nonexistent study, the district court held that "showing a damages model is appropriate for purposes of class certification … does not require actually performing it, it just requires showing that

it meets the legal requirements for class-based damages." Dkt. 238 at 8–9.[3] The district court further held it did not have to rule on admissibility at certification: "if there is some reason that the results themselves are inadmissible here—or if they reveal a flaw in the survey apparent only once they exist—Nissan may move to exclude them *in limine*." *Id.* at 9.

This was error. Class certification requires plaintiffs to "actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275–76 (2014); *see also Olean,* 31 F.4th at 664. "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23, advisory committee notes to 2003 amendments.

*Olean* held a court may admit a proposed classwide-damages model "provided that the district court considers factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives) and resolves disputes raised by the parties." 31 F.4th at 683. Here, the district court did none of this. In fact, it **could** not consider erroneous inputs or nonsensical outputs unless the Plaintiffs actually performed their proposed study. The district court acknowledged this in its opinion, when it

---

[3] In *Lohr,* which involved the same allegations and arguments, Judge Martinez rejected the plaintiffs' promise to show their work later, saying "the evidence has not been created yet, so the Court cannot consider it." 2022 WL 1449680, at *5.

held the analysis could "be challenged, and be excluded closer to trial." Dkt. 238 at 9. *Olean* does not allow this analysis to be postponed.

The district court recognized a split in authority on this issue within the Ninth Circuit. "I recognize that a few courts have excluded surveys (including by Gaskin) for being unperformed." Dkt. 238 at 10. Nor is it the first to recognize this. *See Testone,* 2021 WL 4438391, at *17 (noting "divide among district courts within the Ninth Circuit as to whether a conjoint analysis must be performed at the class certification stage," listing cases). This Court should resolve this split.

The district court sided with courts that admitted unperformed conjoint analyses, reasoning that courts that excluded them "did not attempt to square their decisions with *Daubert's* holding about focusing on methods rather than conclusions." Dkt. 238 at 10. This was also error. Rule 702(b) requires a court to consider whether the opinion is "based on sufficient facts or data," and Rule 702(d) asks whether "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 dictates the correct standard for admitting expert evidence, not *Daubert. See, e.g., Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.,* 831 F.3d 892, 899 (7th Cir. 2016) (noting Rule 702 "superseded *Daubert* many years ago").

### C. The district court ignored individualized issues presented by used-car transactions.

Nissan presented expert evidence that Plaintiffs' damages analysis did not account for injuries allegedly suffered by used-car buyers and sellers. Dkt. 238 at 40. The district court ignored this uncontroverted evidence, cryptically stating that the "parties or court can settle on an appropriate methodology." *Id.* at 41. An example illustrates why resolution should not be deferred: consider a consumer who bought a new vehicle and drove it the "expected" life without the PSR breaking, then sold it to a second consumer. Was either consumer harmed? If so, which? The damages analysis cannot resolve these questions.

Here, half the named plaintiffs (Johnson, Loury, and Seenarain) bought vehicles used, and Spry and Seenarain are uninjured former owners who received payment for their vehicles during this litigation without disclosing any defect (Spry as discussed above) or receiving an insurance payment after totaling the vehicle (Seenarain). *Beaty*, dealing with the same PSR issue, found such used-vehicle-transaction issues precluded common-damages measurement. 2021 WL 3109661, at *13.

These are just a few of the individualized issues that would affect entitlement to damages but cannot be captured by Plaintiffs' damages model.

### D. Acceptance of an unperformed damages model and deferral of equitable claims creates a "death knell" situation.

Given Plaintiffs' unperformed damages model creates enormous uncertainty about the possible extent of Nissan's liability, if this Court does not review manifestly erroneous and fundamental class-action legal questions now, it may not have an opportunity to. *Chamberlan*, 402 F.3d at 960. That enormous uncertainty imposes unfair pressure to settle with a class involving hundreds of thousands of vehicles.[4]

Here, the district court magnified that pressure with its erroneous ruling on equitable claims, a ruling that would prevent Nissan directly appealing any jury verdict until a subsequent completion of a bench trial on those claims. As this Court has held, a plaintiff in federal court must show traditional requirements for equitable relief are met, including inadequacy of legal remedies, regardless of what state law might provide. *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020). This analysis can and should be performed at the pleading stage, but must be done no later than class certification as part of the determination whether individualized inquiries will be necessary to determine appropriate relief. Here, the district court held that it would put off this analysis until *after* trial, failing even to mention *Sonner*. This refusal to make a necessary legal ruling violates the

---

[4] Only one other PSR class action has settled classwide, which occurred after the class was tentatively certified. *See Glenn v. Hyundai Motor Am.*, No. 8:15-cv-02052 (C.D. Cal.) (Dkt. 252, 280).

requirement to decide necessary disputes at certification. *Olean,* 31 F.4th at 665. Further, it entrenches an intra-circuit split regarding when courts can and should determine availability of equitable relief. *See Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-CV-00792-EMC, 2022 WL 844152, at *7 (N.D. Cal. Mar. 22, 2022) ("the import of *Sonner* at the *pleading* stage is an unsettled question of law and has given rise to an intra-circuit split"). This Court should resolve this split on an important and unsettled issue of class-action law.

## CONCLUSION

The Court should grant Nissan's petition.

Respectfully submitted,

 /s/ Amir Nassihi

Amir Nassihi (SBN: 235936)
anassihi@shb.com
Kevin Underhill (SBN: 208211)
kunderhill@shb.com
Andrew Chang (SBN: 222309)
achang@shb.com
Andrew Trask (SBN: 320222)
atrask@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, California 94105
Telephone:  (415) 544-1900
Facsimile:   (415) 391-0281

*Counsel for Nissan N. Am., Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, 32-3, this Petition is proportionately spaced, has a typeface of 14 point and contains 5,585 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32-3.

/s/ Amir Nassihi
Amir Nassihi

## CERTIFICATE OF SERVICE

I, Amir Nassihi, hereby certify that I electronically filed the foregoing Petition for Permission to Appeal Pursuant to FRCP 23(f) with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 4, 2022. I further certify that I have transmitted this document by electronic mail and by Overnight Mail, to the following:

> Mark E. Silvey *(pro hac vice)*
> Gregory F. Coleman *(pro hac vice)*
> Adam A. Edward *(pro hac vice)*
> MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
> First Horizon Plaza
> 800 S. Gray Street, Suite 1100
> Knoxville, TN 37929
> msilvey@milberg.com
> gcoleman@milberg.com
> aedwards@milberg.com
>
> Mitchell M. Breit
> MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
> First Horizon Plaza
> 800 S. Gray Street, Suite 1100
> Knoxville, TN 37929
> mbreit@milberg.com
>
> Crystal Foley (SBN 224627)
> Simmons Hanly Conroy LLC
> 100 N. Sepulveda Blvd., Suite 1350
> El Segundo, CA 90245
> cfoley@simmonsfirm.com

> /s/ Amir Nassihi
> Amir Nassihi