# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## SHERIDA JOHNSON, et al.,
*Plaintiffs-Respondents,*

v.

## NISSAN NORTH AMERICA, INC.,
*Defendant-Petitioner.*

---

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:17-cv-00517 (The Honorable William H. Orrick)

---

## PLAINTIFFS-RESPONDENTS' RESPONSE TO PETITION
## FOR PERMISSION TO APPEAL PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Gregory F. Coleman
gcoleman@milberg.com
Adam A. Edwards
aedwards@milberg.com
William A. Ladnier
wladnier@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
First Horizon Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

*Counsel for Plaintiffs-Respondents*

# TABLE OF CONTENTS

INTRODUCTION .................................................................1

BACKGROUND ..................................................................1

STANDARD OF REVIEW .........................................................4

ARGUMENT .....................................................................5

   I.    The District Court Did Not Err by Finding Evidence of a
Common Defect. ..........................................................5

      A.   The district court applied the correct defect standard. .........5

      B.   Plaintiffs' expert testimony does not constitute *ipse dixit*,
and the district court was correct to admit their opinions. ...................7

   II.   The District Court Did Not Err by Holding that, Under the Facts,
Evidence of Reliance by the Reasonable Consumer Existed. ....................11

   III.  The District Court Did Not Err in Relying Upon Plaintiffs'
Proposed Conjoint Analysis. ...........................................14

      A.   The district court correctly determined that Plaintiffs'
damages model is admissible. ...........................................14

      B.   The district court correctly accepted Plaintiffs' conjoint
analysis, because Plaintiffs' proposal sufficiently describes
their method for calculating classwide damages. ...............................16

      C.   The district court correctly found that Plaintiffs' damages
model satisfied *Comcast* ...................................................19

      D.   The district court's acceptance of a properly proposed
damages model, or its deferral of equitable claims, does not
sound a "death knell" for this litigation. ..............................20

CONCLUSION ..................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013) ......................... 4

*Beaty v. Ford*, 854 F. App'x 845 (9th Cir. 2021) ................................. 12

*Beaty v. Ford Motor Co.*, No. C17-5201 TSZ, 2021 WL 3109661
    (W.D. Wash. July 22, 2021) ....................................... 10, 14

*Cardenas v. Toyota Motor Corp.*, No. 18-22798-Civ-Moreno,
    2021 WL 5811741 (S.D. Fla. Dec. 6, 2021) ..................................... 14

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ........... 20, 21, 22-23

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................... 14

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ............................. 11, 12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ........................ 19

*Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979 (9th Cir. 2020)............ 8, 9

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................. 14

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017) .......................... 20

*Lohr v. Nissan North Am., Inc.*, No. C16-1023RSM, 2022 WL 1449680
    (W.D. Wash. May 9, 2022) ............................................... 17

*MacDougall v. Am. Honda Motor Co.*, No. 20-56060, 2021 WL 6101256
    (9th Cir. Dec. 21, 2021) ................................................... 15

*Maldonado v. Apple, Inc.*, No. 16-CV-04067-WHO, 2021 WL 1947512
    (N.D. Cal. May 14, 2021) ............................................... 14

*Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019) ....................... *passim*

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F. 4th 651 (9th Cir. 2022) .......................................... 17

*In re Toyota Motor Corp. Unintended Acceleration Mkt., Sales Pracs.,
and Prods. Litig.*, 978 F. Supp. 2d 1053 (C.D. Cal. 2013) .................... 9, 10, 11

*Yokoyama v. Midland Nat'l Life Ins. Cor.*, 594 F.3d 1087
(9th Cir. 2010) ............................................................. 19, 20

*Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623 (9th Cir. 2018) ................... 14, 15

*Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK,
2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) .................................................... 15

**Rules**

Fed. R. Civ. P. 23 ......................................................................... 4, 17, 19

## INTRODUCTION

The district court did not commit error in certifying four state classes of consumers who purchased or leased certain models of Nissan vehicles equipped with defective panoramic sunroofs ("PSRs"). Defendant-Petitioner Nissan North America, Inc.'s ("Nissan") Petition lacks merit. The district court appropriately considered the evidence and applied the relevant law to the claims asserted. *See* Order, Dkt. 238 (the "Order"). The court did not abuse his discretion. Nissan has failed to establish a basis to challenge the district court's Order, so the Petition should be denied.

## BACKGROUND

Plaintiffs-Respondents' ("Plaintiffs") claims are based upon Nissan's refusal to acknowledge and address a dangerous safety defect in its Class Vehicles. The PSRs in the Class Vehicles are made from tempered glass panels that are unable to withstand the stresses and environmental factors present under ordinary driving conditions (the "Defect"). The Defect causes the PSRs to suffer from a propensity to shatter—suddenly, violently, and without warning—creating a loud noise and raining sharp glass fragments down on the vehicle's occupants, which in turn creates a serious safety hazard. Plaintiffs filed this lawsuit on behalf of themselves and all others who purchased or leased a Nissan vehicle with a Nissan defective PSR.

***The Class Vehicles' Panoramic Sunroofs Contain a Common Defect.***

The PSRs share common design features across all Class Vehicles that make them vulnerable to shattering. *E.g.*, Order, Dkt. 238, at 18; Read Decl., Dkt. 135-4, ¶¶ 17, 27, 51-56. Plaintiffs' experts, Neil Hannemann and Dr. Thomas Read, note these multiple, commonly shared design features, including that the PSRs are all made of tempered glass, curved, and fitted directly into the vehicle's rigid unibody frame. Hannemann Decl., Dkt. 135-3, ¶¶ 21-23, 27; Read Decl. ¶¶ 31, 53-59. They explain that by fitting the PSRs directly into the vehicle's rigid, unibody frame, the forces and stresses of vehicular movement are absorbed and transferred directly to the glass PSR. Hannemann Decl. ¶ 23; Read Decl. ¶¶ 2, 52. Further, environmental conditions (like changes in temperature) and other common mechanical stresses also apply tensile stresses onto the PSR, making it susceptible to progressive failure. Read Decl. ¶¶ 51-52; *see also* Order 19 (citing *id.* ¶¶ 33-46). Any scratch, chip, or abrasion introduces a surface flaw to the PSR, which over time can progress into the glass's tensile region, at which point the glass will suddenly shatter without warning. Order 19 (citing Read Decl. ¶¶ 33-49, 52A-53F).

The unexpected shattering of the PSRs endangers drivers, passengers, and anyone else on the road. *E.g.*, Hannemann Decl. ¶¶ 26, 29, 33-34, 40-41. The most obvious concern is the distraction caused by the PSR suddenly shattering without warning. Order 17 (citing Hannemann Decl. ¶ 32, n.27). These concerns are

illustrated by Nissan's own documents, Plaintiffs' personal accounts, and numerous other consumer complaints. Order 14-15 (citing Hannemann Decl. ¶¶ 19-23, 26, 32).

**Nissan Knew of the Defect but Concealed It from Consumers.**

Nissan began selling Class Vehicle models with PSRs during the 2009 model year and began receiving reports of PSRs shattering for no apparent reason at least as early as June 2008. *See* Dkts. 135-8, 135-16, 135-17. In November 2008, Nissan began investigating the issues. Dkt. 135-17. Although Nissan received an influx of consumer complaints about shattering PSR glass in the Maxima and Murano models between 2008 and 2012 (and afterwards), it failed to remediate the Defect or disclose its existence, while continuing to introduce the defective PSRs into additional models. *See* Dkt. 135-14; 135-21, at 1-3. By 2014, the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation inquired about the PSRs in Nissan's vehicles as part of an ongoing investigation, noting that "spontaneous sunroof shattering, resulting in potential driver distraction (while in motion) and injuries from falling glass fragments" constituted a serious safety defect. Dkt. 219-27, at 1.

By concealing its knowledge of the Defect, Nissan was able to sell charge a price premium for Class Vehicles. Class Members, understandably unaware of the Defect, overpaid for their Class Vehicles, believing them to be defect-free. Had Nissan properly disclosed the Defect to consumers prior to their purchase, they

would not have purchased the Class Vehicles—or at least paid significantly less for them. To date, Nissan continues to categorically deny the existence of the Defect. *See, e.g.*, Answer, Dkt. 93, ¶ 9.

***The District Court Appropriately Considered This Evidence in Granting Class Certification.***

Following years of litigation, including extensive briefing on the class certification motion, the motions to exclude experts, and summary judgment, the district court issued an opinion fully analyzing the relevant issues. Order, Dkt. 238. As Plaintiffs explain below, the district court properly analyzed the issues and committed no error in reaching its conclusions.

## STANDARD OF REVIEW

When reviewing a district court's decision under Federal Rule of Civil Procedure 23(f), this Court reviews for an abuse of discretion. *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 816 (9th Cir. 2019). "When reviewing a grant of class certification, we accord the district court *noticeably more deference* than when we review a denial of class certification." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) (emphasis added). If the district court applied the correct legal standard, its certification order will only be set aside "if the court's reasoning was 'illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Nguyen*, 932 F.3d at 816.

# ARGUMENT

## I.   The District Court Did Not Err by Finding Evidence of a Common Defect.

### A.   The district court applied the correct defect standard.

Nissan first asserts that the district court "manifestly erred by: (1) adopting an improper defect standard; (2) relying on inadmissible 'qualitative' opinion about a 'propensity' to break; and (3) relying on inadmissible expert testimony regarding the alleged risk." Pet. 18. Nissan is incorrect on all fronts. The district court's findings do not represent manifest error, and the Petition should be denied.

First, the district court properly analyzed the Defect. Primarily, Nissan argues that Plaintiffs' theory exclusively relied on a "life-of-the-vehicle theor[y]" that the "PSR may break during [the Class Vehicle's useful life when] exposed to 'ordinary and foreseeable conditions.'" Pet. 18 (quoting Class Cert. Mot., Dkt. 135, at 4-5). But Nissan ignores the district court's analysis of the Defect. The district court analyzed the Defect in light of the claims raise—that Nissan "fail[ed] to disclose the alleged defect" under various consumer protection statutes and violated the implied warranty of merchantability. Order 1. At no point does the district court address a Class Vehicle's expected useful lifespan—because doing so is irrelevant to the claims and the alleged Defect.

When analyzing Nissan's arguments "that the plaintiffs have not even clearly identified what alleged defect is at issue," the district court noted that Nissan

misunderstands (or intentionally misstates) Plaintiffs' claims. Order 21. And Nissan continues this tactic here. "The claims at issue are not product liability claims." *Id.* Thus, how the Defect is defined is important "only to the extent that it shows it is something that Nissan was obligated to disclose or misrepresented. . . . [or] whether a product is fit for ordinary use." *Id.* at 22. The proof supports that the PSRs "have a propensity to shatter . . . under normal driving conditions." *Id.*

Nissan's claim that the district court "erred by not requiring Plaintiffs' Defect theory have a 'common solution,'" is also incorrect. Pet. 18. Nissan asserts that Plaintiffs have presented "only" a single alternative—namely, the use of laminate glass—but this ignores the evidence. Plaintiffs proffered Dr. Thomas Read, an expert in glass failure analysis, opined about *multiple* safer alternative designs. Read Decl. ¶ 60. Dr. Read explained that other vehicle manufacturers "[r]ecogniz[e] the potential safety hazard posed by tempered glass sunroofs, . . . [and] use laminated glass exclusively in their PSR designs." *Id.* As Dr. Read notes, laminated glass "can chip or crack on impact"—much like a windshield—"but will not shatter like tempered glass." *Id.* ¶ 61. Because Nissan's PSR design allowed the PSR to shatter in an unsafe manner—often seemingly spontaneously and even while the vehicle was in motion—"laminated glass is a viable option for applications where the glass sits above vehicle occupants' heads and would immediately make PSRs safer for vehicle occupants." *Id.* ¶ 62. Other alternatives include: the application of different

films, either to the underside or outside of the PSR, to strengthen it or prevent it from ejecting shards when it did break. *Id.* ¶¶ 65-67. "While a steel roof is the safest material to use," multiple alternative glass designs were available to address the serious safety Defect in the PSRs. Unlike Nissan, the district court took note of these "alternative design choices available." Order 18.

Nissan's attempt to misstate both the evidence and the district court's analysis should be rejected. Nissan's formulation that the Defect was ill-defined or otherwise was generally a "life-of-the-vehicle theor[y]" mischaracterizes the district court's analysis. The district court applied the correct defect standard to Plaintiffs' claims. *Id.* at 21-22. Nissan's mischaracterizations of this analysis and of the record cannot manufacture an "unsettled, fundamental legal issue" in a naked attempt to create appealability here.

**B. Plaintiffs' expert testimony does not constitute *ipse dixit*, and the district court was correct to admit their opinions.**

Nissan asserts that Plaintiffs' experts rely on overbroad, generalized opinions that cannot support certification. Pet. 19. However, Nissan's reading of Plaintiffs' expert testimony is strained at best. Nissan's argument suggests that Plaintiffs' experts testified only that "the PSRs shatter" without any further explanation; but this is simply not the case. Mr. Hannemann, an expert with years of automotive engineering experience, explains that the PSRs' propensity to shatter, potentially

while the car is in motion, risks distracting the driver, which is a serious safety hazard. Order 15-16.

Nissan also condemns Mr. Hannemann for not asserting a failure rate associated with the Defect; but this is not required. As the district court noted, Plaintiffs do not raise product liability claims, but instead assert that Nissan deceptively marketed the Class Vehicles by knowingly failing to disclose the Defect. *Id.* at 21. The district court correctly understood that, given the specific claims in this litigation, it was not necessary for Mr. Hannemann to proffer an exact, quantitative failure rate. Instead, the district court explains that his qualitative measure—that the PSRs are prone to shatter under normal driving conditions—is sufficient to examine whether a reasonable consumer would likely be deceived. *Id.* at 16. That is, the trier of fact can analyze whether a reasonable consumer would be deceived if they purchased a vehicle with a PSR that was "prone to shatter under normal driving conditions" in the same way it can analyze whether the reasonable consumer would be deceived if purchasing a vehicle with a PSR that, for example, "could shatter 2.5% of the time." The district court correctly found that Nissan could attack Mr. Hannemann's qualitative analysis, but it remained admissible. *Id.* at 16, 19 n.5.

To support its claim of error on this basis, Nissan cites only *Grodzitsky*. Pet. 19 (citing *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 985-87 (9th Cir.

2020)). However, the expert in *Grodzitsky* represents a far cry from Plaintiffs' experts here. There, the expert failed to describe the defect *whatsoever*, instead only suggesting that the product (window regulators in Honda vehicles) was defective because the product failed when it "shouldn't fail ever." *Grodzitsky*, 957 F.3d at 985. When pressed, the expert failed to explain further, including a failure to articulate a scientific basis for his opinions. *Id.* at 986. *That* opinion is an *ipse dixit*—but this is a far cry from the opinions proffered by Plaintiffs' experts.

Dr. Read and Mr. Hannemann fully explain their opinions. Mr. Hannemann, for example, describes in detail the design of the PSRs and how that design directly contributes to the heightened propensity for the PSRs to shatter. Hannemann Decl., ¶¶ 20-28. This represents a serious safety hazard, as it directly contributes to driver distraction. *Id.* ¶¶ 29-40. Nissan criticizes Mr. Hanneman, stating that his opinions "lack[] a scientific basis." Pet. 20. However, Nissan ignores that Mr. Hannemann reviewed numerous consumer complaints, reviewed the design of the PSR itself, and examined a government investigation into problems with the PSR. Order 17. Nissan's criticisms examine the *extent* of Mr. Hannemann's review—not the fact that he failed entirely to perform a data analysis. Such criticisms go to the weight afforded the opinions, but not their reliability or admissibility. *See In re Toyota Motor Corp. Unintended Acceleration Mkt., Sales Pracs., and Prods. Litig.*, 978 F. Supp. 2d 1053, 1073 (C.D. Cal. 2013). And the district court held just that. Order

17; *see also Beaty v. Ford Motor Co.*, No. C17-5201 TSZ, 2021 WL 3109661, at *4 (W.D. Wash. July 22, 2021) (refusing to exclude Mr. Hannemann over similar criticisms).

In a similar vein, Nissan also criticizes Dr. Read's opinions for failing to empirically test the shattered PSRs. *See* Pet. 20. Dr. Read explains in great detail that the Defect arises out of a "combination" of factors, all of which are incorporated into the PSR's design. Read Decl. ¶¶ 2, 54; *see also* Order 19. The fact that Dr. Read did not perform an empirical examination of a shattered PSR does not require exclusion of his opinions. *See In re Toyota*, 978 F. Supp. 2d at 1073. While Nissan asserts that its expert's opinions should carry the day, its argument highlights a "battle of the experts," which goes only to weight. Order 20 (citing cases).

Nissan asserts that Plaintiffs' opinions must be *ipse dixit*, but it offers nothing that supports such a conclusion, other than a hopeful attempt to liken this to *Grodzitsky*, where the proffered expert's opinions were not based on any empirical analysis and failed entirely to define a defect. Dr. Read and Dr. Hannemann have done the opposite here, which the district court recognized. Now Nissan simply calls it *ipse dixit* because it wants it to be so. Nissan's heavy reliance on its own experts' conclusions, if anything, illustrates that the district court was correct to consider the opinions and permit them ultimately be weighed by the jury. The district court correctly considered and analyzed these issues.

**II.  The District Court Did Not Err by Holding that, Under the Facts, Evidence of Reliance by the Reasonable Consumer Existed.**

Nissan's assertion that the district court improperly applied a "one-size-fits-all approach" when inferring classwide reliance is not supported in the record. *See* Pet. 22-24. Nissan would have this Court believe that the district court presumed classwide reliance for no reason whatsoever. *Id.* at 23 ("Plaintiffs did not present *any* classwide materiality evidence." (emphasis in original)). This is simply not true. A review of the district court's opinion reveals that Plaintiffs "put forward sufficient evidence from which a jury could infer reliance." Order 25.

The district court, for example, discussed each of the named Plaintiffs' declarations, which explained that "had they known of the alleged defect, they would not have purchased their vehicles," with one Plaintiff noting that she conducted significant research before purchasing a vehicle and that the sunroof feature was important to her." *Id.* Based on this, "a jury could reasonably find that, if Nissan adequately disclosed the defect, the named plaintiffs would have known of it." *Id.* (citing cases); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (holding that reliance can be shown "simply by proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently"). This is precisely what the record shows, and what the district court held.

"[S]o long as the omission is material, plaintiffs are entitled to a presumption or inference of reliance."[1] Order 25 (citing *Daniel*, 806 F.3d at 1225). Nissan cites the deposition testimony of a single plaintiff and an expert's opinion that "different automobile buyers weigh different aspects of vehicles differently" to argue that Nissan's refusal to disclose a serious safety defect could not be material. *See* Pet. 22-23. However, "[a]lleged defects that create 'unreasonable safety risks' are considered material." *Daniel*, 806 F.3d at 1225. The district court explained that whether the PSRs shatter under normal driving conditions is "likely to be material to a reasonable consumer both for its own sake (as it requires replacing a car part) but also because overhead glass shattering while driving is an obvious *safety* issue." Order 23-24. Indeed, this Court, when considering a case just like this one, held that "a reasonable juror could find that even a small risk that a PSR might explode without warning is a material fact." *Beaty v. Ford*, 854 F. App'x 845, 849-50 (9th Cir. 2021). In response, Nissan presents *subjective* evidence, highlighting a single consumer's opinions or evidence that some consumers, when surveyed and

---

[1] Nissan takes issue with the district court's choice of words—a point that is irrelevant to this Court's consideration whether to accept this appeal. *See* Pet. 22 ("There is no 'presumption' of reliance . . . . Reliance can be *inferred* classwide." (emphasis in original)). Setting aside this distinction without a difference, the district court's Order makes clear that it was inferring reliance on a classwide basis. Order 25. "[S]o long as the omission is material, plaintiffs are entitled to a *presumption or inference of reliance*." *Id.* (emphasis added).

presented with various product choice tasks, may prefer certain attributes.[2] This, however, does not overcome the fact that the safety Defect is material, or that because it is material, reliance by the reasonable consumer is inferred on a classwide basis. Nissan cannot overcome the well-established case law on this point, which the district court correctly applied.

At best, Nissan's evidence is appropriate for presenting to a jury to weigh whether, in reality, the Defect is material—but this evidence does not refute reliance or materiality at this stage. Indeed, even if the Court were to credit Nissan's arguments—which it should not do—the evidence on which Nissan relies does not actually refute that class certification is appropriate. Indeed, if credited, Nissan's arguments can be considered on a classwide basis; its arguments would attack, and potentially defeat, Plaintiffs' omissions-based claims in one fell swoop, across the entire class all at once. This alone illustrates that the district court did not err in certifying the class.

---

[2] If the Court were to give Nissan's argument any credence, it would destroy the objectivity of the reasonable consumer test. Moreover, if Nissan's argument that simply because some consumers may value certain product attributes in different ways were to prevail, no consumer product, mislabeling, or automotive class action could be certified any longer. Accepting Nissan's argument would require the Court to reach absurd results and upend *decades* of established class action law. Nissan's argument, and its petition to appeal, should be dismissed out of hand for these reasons alone.

### III.  The District Court Did Not Err in Relying Upon Plaintiffs' Proposed Conjoint Analysis.

#### A.  The district court correctly determined that Plaintiffs' damages model is admissible.

Nissan argues that the district court erred in holding that "'attribute selection' such as considering supply-side factors 'goes to the weight and not admissibility.'" Pet. 25. As Nissan claims, Plaintiffs' proposed conjoint fails to properly consider supply-side factors; but it did. Nissan also asserts that there is a split in authority on this issue. While a small collection of cases have excluded conjoint analyses for failure to account for supply-side factors, the *vast* majority of district courts have routinely rejected such arguments. *See Maldonado v. Apple, Inc.*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *21 (N.D. Cal. May 14, 2021); *Beaty v. Ford Motor Co.,* No. C17-5201 TSZ, 2021 WL 3109661, at *5 (W.D. Wash. July 22, 2021); *Cardenas v. Toyota Motor Corp.*, No. 18-22798-Civ-Moreno, 2021 WL 5811741, at *4 (S.D. Fla. Dec. 6, 2021); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 954 (C.D. Cal. 2015). Grasping for supportive decisions, Nissan again "attempts to side-step *Maldonado* and the bevy of cases taking the same approach by relying on the Ninth Circuit's decision in *Zakaria v. Gerber Prods. Co*., 755 F. App'x 623 (9th Cir. 2018)." Order 11. Nissan fails to note that *Zakaria* (the primary case on which it relies) was an unpublished opinion, which this Court has recently refused to follow

in another unpublished opinion. *Id.* at 11-12 (citing *MacDougall v. Am. Honda Motor Co.*, No. 20-56060, 2021 WL 6101256, at *1 (9th Cir. Dec. 21, 2021) ("*MacDougall II*")).

But putting aside the more recent, and better-reasoned, *MacDougall II* case, *Zakaria*'s analysis does not apply under these facts. In *Zakaria*, the Court upheld the district court's decertification because the plaintiff's expert's failed entirely to account for supply-side factors and how they would affect product pricing. *Zakaria*, 755 F. App'x at 624. The conjoint analysis "did not reflect market realities and prices for infant formula products" because it did not show "what had occurred to the *actual* market price" with or without the relevant representation. *Id.* at 624-25 (emphasis added). Instead, the conjoint analysis only "closely resemble[d] the actual retail price" and ultimately did not "account[] for the actual price" of the product. *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK, 2017 WL 9512587, at *10, 20 (C.D. Cal. Aug. 9, 2017). In contrast, in *MacDougall II*, when presented with the same arguments, this Court held that "the absence of market considerations," among other conjoint analysis-specific factors, "go to the weight given the survey, not its admissibility." *MacDougall II*, 2021 WL 6101256, at *1.

The Court need not concern itself with whether *Zakaria* or *MacDougall II* represents the appropriate analysis. Nissan is wrong to rely on *Zakaria* in the first place because it simply does not apply. Even assuming *Zakaria* was appropriately

decided, Plaintiffs' proposed conjoint analysis here addresses those issues that fell short in *Zakaria*—namely, that Plaintiffs' economic expert, Colin Weir, has explained that he will use the *actual* sales and market data, including the total number of Class Vehicles actually sold and the actual manufacturer suggested retail price ("MSRP") that existed in the market during the class period to calculate classwide damages. Weir Decl., Dkt. 135-19, ¶¶ 30-48; Gaskin Decl., Dkt. 135-18, ¶ 22. Plaintiffs' damages model complies with *Zakaria*.

There is no "split" that requires resolution. And even if there were, this case is not the appropriate vehicle for doing so, because Plaintiffs' proposed conjoint already addresses each of the concerns raised by the *Zakaria* court. Plaintiffs have proposed a fair, appropriate method for calculating the price premium paid by Class Members. Nothing more is required. Nissan is free to raise its concerns, but they go to the weight of the conjoint analysis—not its admissibility. Nissan's arguments are more appropriately directed to the jury, not this Court. The Court should deny the petition.

**B.    The district court correctly accepted Plaintiffs' conjoint analysis, because Plaintiffs' proposal sufficiently describes their method for calculating classwide damages.**

Nissan relies on *Olean* to argue that the district court erred in relying upon an unperformed conjoint analysis. Pet. 27-28. But the question of whether an expert is obliged to perform a damages analysis pre-certification was never considered in

*Olean. Cf. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651 (9th Cir. 2022) (not addressing conjoint analysis whatsoever). There is nothing to suggest the *Olean* court would have denied certification had the analyses not been performed. Indeed, where, as here, a plaintiff has proposed a method for calculating damages with sufficient clarity so as to enable the district court to "rigorously assess" whether the theory of liability matches the calculation method and supports Rule 23's requirements, there is no need to *require* that damages actually be calculated. *See* Order 8-9 (explaining that at class certification, the plaintiff is not required to actually perform the damages calculation, "it just requires showing that [the proposal for calculating damages] meets the legal requirements for class-based damages").[3] In fact, the *Olean* court—and numerous other courts—have observed that the "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether

---

[3] Nissan cites to a different case, *Lohr*, where another district court "rejected plaintiffs' promise to show their work." Pet. 27 n.3 (citing *Lohr v. Nissan North Am., Inc.*, No. C16-1023RSM, 2022 WL 1449680, at *5 (W.D. Wash. May 9, 2022)). But there, the district court addressed this issue at *summary judgment*—not class certification. It granted summary judgment against the plaintiffs based in part on a flawed belief that "the evidence" to support a damages calculation "has not been created yet." *Lohr*, 2022 WL 1449680, at *5. Although that conclusion was clearly wrong—the "evidence" for calculating damages in this context is the underlying factual evidence, such as sales data, pricing data, and units sold—it is irrelevant here, given the different postures of the two cases. And, in any event, *Lohr* is already the subject of an appeal currently pending before this Court. *See Lohr v. Nissan North Am., Inc.*, No. 22-35473 (9th Cir. 2022).

the evidence in fact establishes that plaintiff would win at trial." *Id.* at 667 (emphasis in original) (quoting *Wal-Mart*, 564 U.S. at 351). What Nissan demands is that a plaintiff in any class action go well-beyond what *Wal-Mart* and *Olean* require—that a plaintiff field the conjoint and actually calculate damages and essentially prove the merits of damages, rather than demonstrating *capability* of calculating damages. The case law does not—and has never—required so much. This Court's language in *Olean* does nothing to change the analysis.

Nissan attempts to convince this Court that there is a split in authority on the issue. Pet. 28. But the case law is clear and consonant: an expert need not carry out a damages analysis before class certification if the evidence shows by a preponderance that damages are *capable* of measurement on a classwide basis. Nissan approaches the issue as if the only evidence to satisfy this burden is the damage calculation itself. This ignores the obvious: the expert's proposed model— including the meticulously outlined methodology, the facts considered in carrying it out, and the expert's related testimony—all constitute "admissible evidence." That the eventual results of the analysis also constitute evidence does not change this. Thus, plaintiffs can prove by a preponderance of "admissible evidence" at the class certification stage that damages are "capable of" classwide determination—which is all that is required—without fielding the survey and analysis. Order 8 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that

they generate.") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).[4]

## C. The district court correctly found that Plaintiffs' damages model satisfied *Comcast*.

Nissan contends that the district court erred by "ignor[ing] individualized issues presented by used-car transactions." Pet. 29. But the district court did not "ignore" these issues. Indeed, the district court explicitly addressed Nissan's concern of used-car purchasers and correctly concluded that "the plaintiff's damages model satisfied Rule 23 and *Comcast.*" Order 40. This is because *individual* damages have no bearing on whether a damages analysis sufficiently measures *classwide* damages. *See Nguyen*, 932 F.3d at 817 (explaining that "individualized damages issues do not alone defeat certification"); *see also Yokoyama v. Midland Nat'l Life Ins. Cor.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[D]amage calculations alone cannot defeat certification."). Plaintiffs have proposed a valid method for calculating the *total* classwide damages, tied directly to the sale of each Class Vehicle. How that total

---

[4] After being fielded, Nissan is free to examine the results and, if it believes that the conjoint analysis's results demonstrate that classwide damages were improperly calculated, Nissan may move for decertification. This mechanism ensures that a defendant is not prejudiced where the results of a damages calculation does not comport with its proposal. Here, however, Nissan would demand that this Court require a plaintiff to actually calculate damages at the earliest stage, taking on additional burden and costs, when the district court's analysis already ensures Nissan is not prejudiced. Nothing in the record suggests that the district court failed to apply applicable case law, that it erred, or that its determination regarding Plaintiffs' damages model would ever prejudice Nissan.

amount of damages is allocated to each person who owned a Class Vehicle is "an issue of allocation of damages," not of class certification. Order 41. As the district court explained, "[t]he parties or court can settle on an appropriate methodology for adjusting the *amount* of *individual* damages to take due account of the depreciation in value and the lower price paid." *Id.* This does not, however, defeat certification. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds* 139 S. Ct. 710 (2019) ("Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.").

**D.      The district court's acceptance of a properly proposed damages model, or its deferral of equitable claims, does not sound a "death knell" for this litigation.**

Nissan first attempts to fit this case into the death knell category by arguing that "Plaintiffs' unperformed damages model creates enormous uncertainty about the possible extent of Nissan's liability[.]" Pet. 30. Nissan claims that this "uncertainty imposes unfair pressure to settle[.]" *Id.* In *Chamberlan v. Ford Motor Co.,* the Ninth Circuit stated, "When evaluating whether the certification would end the litigation for [the defendant], we consider whether [the defendant] has sufficiently demonstrated 'that the damages claimed would force a company of its size to settle without relation to the merits of the class's claims.'" 402 F.3d 952, 960 (9th Cir. 2005). As was the case in *Chamberlan,* Nissan "has made no showing that

it lacks the resources to defend this case to a conclusion and appeal if necessary or that doing so would 'run the risk of ruinous liability." *Id.* (internal quotation marks omitted). "In connection with the death knell factor, [the Ninth Circuit] normally would look for error in the certification order." *Id.* (citing *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832, 835 (7th Cir. 1999)). But again, Nissan has not shown that an unperformed damages model would negatively impact this litigation—let alone effectively kill it—so there is nothing for this Court to review. Indeed, the district court's certification based on Plaintiffs' proposed damages model could *not* sound the death knell of this litigation because Nissan will still have an opportunity to challenge the conjoint analysis' results once fielded through a motion for decertification. *See supra* 19 n.4. Moreover, at trial, Nissan may offer countervailing evidence to challenge the propriety of Plaintiffs' damages calculations—or to challenge the weight afforded to their experts' liability opinions. Nissan has raised numerous arguments on this appeal. While *none* of them demonstrate error by the district court, Nissan appears to believe strongly in these arguments, and as such they can present them to the jury in the hopes of prevailing at trial. This alone illustrates that the district court's certification order does not sound the death knell of litigation—Nissan will have many opportunities to convince the jury that it should prevail.

Nissan also asserts that the district court's finding that it would consider Plaintiffs' equitable claims after trial "magnifie[s the] pressure" on Nissan to potentially settle. Pet. 30. Nissan asserts that this constitutes error but never explains why. The district court held that it would not rule on whether Plaintiffs have an adequate remedy at law until "the end of the trial." Order 28. As the court explained, although "some courts have dismissed equitable claims at earlier junctions in the case, [] that risks depriving the plaintiffs of remedies to which they may be entitled." *Id.* Nissan cannot explain how this is error. Moreover, it cannot demonstrate how this represents a death knell in the litigation. Plaintiffs' equitable claims are for restitution under California's CLRA and UCL. If Plaintiffs fail to prevail at trial, then Nissan will have suffered no prejudice through the district court's decision to decide these issues after trial. And if Plaintiffs do prevail at trial on their legal claims, Nissan may still assert that this represents an adequate remedy, to which the district court can dismiss the restitution claims under the CLRA and UCL as duplicative— which would, again, result in no prejudice to Nissan.[5]

The Court should not accept this appeal, because Nissan has failed to illustrate that the certification order sounds a death knell for the litigation. *See Chamberlan,* 402 F.3d at 960-61 (refusing to "address whether the order is erroneous under this

---

[5] Notably, the district court found *in Nissan's favor* in dismissing Plaintiffs' equitable claims on restitution and unjust enrichment "for the purchase of used cars from entities other than Nissan." Order 28.

factor" because the defendant failed to "sufficiently demonstrate[] that the class certification will be the death of this litigation").

## CONCLUSION

The Court should deny the petition for permission to appeal.

Dated: August 15, 2022

Respectfully submitted,

/s/ *Gregory F. Coleman*

Gregory F. Coleman
Adam E. Edwards
William A. Ladnier
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37931
Tel: (865) 247-0080
Fax: (865) 522-0049
gcoleman@milberg.com
aedwards@milberg.com
wladnier@milberg.com

Mitchell Breit
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (212) 594-5300
mbreit@milberg.com

Crystal Foley
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Boulevard, Suite 1350
El Segundo, CA 90245
Tel: (310) 322-3555
Fax: (310) 322-3655
cfoley@simmonsfirm.com

*Counsel for Plaintiffs-Petitioners*

## CERTIFICATE OF COMPLIANCE

This Response complies with the page-volume limitations of Ninth Circuit Rules 5-2 and 32-3 because this Response contains 5,520 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f). Specifically, this Response complies with the limitations of Ninth Circuit Rule 32-3 because the word count divided by 280 does not exceed the 20-page limit designated by Ninth Circuit Rule 5-2(b). This Response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/*Gregory F. Coleman*

Gregory F. Coleman

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022 I electronically filed the foregoing Response with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system. All counsel consented in writing to electronic service via email. I emailed the petition to the following people:

Amir Nassihi
Kevin Underhill
Andrew Chang
Andrew Trask
**SHOOK, HARDY & BACON LLP**
555 Mission Street, Suite 2300
San Francisco, California 94105
Tel: (415) 544-1900
Fax: (415) 391-0281
anassihi@shb.com
kunderhill@shb.com
achang@shb.com
atrask@shb.com

*Counsel for Defendant-Petitioner,*
*Nissan North America, Inc.*

/s/ *Gregory F. Coleman*

Gregory F. Coleman